## Dible *v.* Davis, Appellant (No. 1).

*Landlord and tenant—Cotenants—Extension of term—Apparent authority to make extension—Evidence—Question for jury.*

While it is the general rule that one of two cotenants cannot, without the knowledge or assent of the other, bind the latter to an extension of the term, yet where there is evidence that one of the cotenants in making an extension was acting within the apparent scope of his authority, the question of the liability of the other tenant, is one for the jury.

Argued May 15, 1912. Appeal, No. 177, April T., 1912, by defendant, from judgment of C. P. No. 4, Allegheny Co., No. 35, Fourth T., 1908, on verdict for plaintiff in case of Jennie S. Dible v. R. B. Davis and C. G. Couch. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Assumpsit for rent. Before FRAZER, P. J.

Four suits were brought for rent due for different periods.

The opinion of the Superior Court states the facts.

Verdict and judgment for plaintiff for $345. Defendant appealed.

*Errors assigned* were (1) portion of charge, quoted in the opinion of the Superior Court, and (3) refusal of binding instructions for defendant.

*E. J. M'Kenna* and *E. E. Fulmer,* with them *C. W. Jones,* for appellants.—The first lease was made to R. B. Davis and C. G. Couch and neither by his own act could bind the other for renewal: McKinley v. Peters, 111 Pa. 283.

It may be argued that the second lease—that is, the lease for additional space—made at the time the extension is alleged to have been made, and which was for two years was accepted by Davis and tends to show a ratification of Couch's act, but we contend that such lease would not

have shown an acceptance of the option to renew, even if Davis had signed it himself: Crouch v. Trimby, etc., Shoe Co., 83 Hun, 276; Tweedie v. Olson Hardware & Furniture Co., 107 N. W. Repr. 557; Buchanan v. Whitman, 151 N. Y. 253 (45 N. E. Repr. 556); Behler v. Howell, 41 W. Va. 610 (24 S. E. Repr. 646); Finch v. Underwood, L. R. 2 Ch. Div. 310.

*Joseph F. Mayhugh,* for appellee.—Under our theory of the law the possession of Moss and Pope was the possession of Davis and Couch, and Davis and Couch were liable to the plaintiff: Ghegan v. Young, 23 Pa. 18; Fisher v. Milliken, 8 Pa. 111; Frank v. Maguire, 42 Pa. 77; Washington Natural Gas Company v. Johnson, 123 Pa. 576.

A tenant cannot relieve himself by assigning his lease. The assignee must be accepted by lessor as tenant in place of lessee to discharge the latter: Thompson's Estate, 205 Pa. 555; Fulmer v. Crossman, 8 Del. County, 78; McBrier v. Marshall, 126 Pa. 390; Graham v. Dempsey, 169 Pa. 460; Harding v. Seeley, 148 Pa. 20.

OPINION BY HEAD, J., October 14, 1912:

The defendants were cotenants of the demised premises under a written lease. The original term of the demise was thirteen months, to wit, from April 1, 1906, to May 1, 1907. The lease contained the customary covenant that if the lessees should hold over, after the expiration of the term, the contract should continue in force for another year and so on from year to year. It contained the further stipulation that the lessees should have the privilege, at their option, of extending the term of the lease for an additional period of two years at the same rent, provided they gave notice of their election to so extend the term prior to the first of January of each year. Whilst under this clause it would be within the right of the lessees to make a separate election for each of two annual extensions, it would certainly be competent for them to avail themselves at once of the full extent of

their privilege and, upon notice to the lessors of such election, the term would at once be lengthened by the two years embraced in the privilege.

The lessees conducted in the demised premises a moving picture and vaudeville show. Couch, one of the defendants, admits in his testimony the lessees had elected to extend the term for at least one year and that he had given the required notice. He says, "I had accepted it before the first of January for that year and I knew I was obligated to pay the rent until the first of May, 1908." Davis, the other defendant, in his testimony does not even hint at any denial or repudiation of the act of Couch in thus arranging for an extension, for at least one year, of the original term. And it may be properly noted here that in the entire record of the trial we can discover no evidence that any question as to the authority of Couch, to act for his codefendant in the matter of the extension of the term, was ever brought to the attention of court or jury. The pleadings, the evidence, the points presented by counsel and the original reasons assigned in support of the motion for a new trial, all are silent as to any such claim. The contention of the defendants was, that as to the lease already mentioned, they never elected to extend its term beyond May 1, 1908, and their obligation to pay therefore ceased at that time.

The counterclaim of the plaintiff was that in the latter part of April, 1907, when the original term of the lease already mentioned was about to expire, Couch, one of the defendants, negotiated another lease for additional space in the rear of the lot upon which the building already occupied by them stood. Their business then appeared to be so promising that they needed more room upon which to erect a new stage from which their exhibitions would be given. On that date a new lease for the required additional ground was executed to the same lessees for a straight term of two years from May, 1907. The plaintiff alleges that at that time notice was given that the first lease was to remain in force until the same period,

thus making both leases expire on the same date, to wit, May 1, 1909. In pursuance of this understanding, the owner executed the new lease and it was signed by Couch for himself and for Davis. They went into possession, the property was rearranged in accordance with their plans, and they began to pay rent on both leases.

In July, 1907, the defendants effected a sale of their business to Moss & Pope, and desired the plaintiff to accept them as tenants in their stead. This the plaintiff refused to do. The subtenants continued to conduct the business into the following year and either paid the rent themselves or with such assistance as was rendered them by Couch & Davis. The receipts for the rent, however, were always made out to the original lessees, the lessor declining to recognize the subtenants. After the year starting May 1, 1908, had begun, with the subtenants still in possession, the rent became in arrears. The subtenants were sold out or became insolvent and vacated the premises. The plaintiff then made some effort to secure an occupant for the remainder of the term in relief of the obligation of the defendants, but was unable to obtain any rent from the person who for a short time went into possession.

Now it is clear that in July, 1907, when Couch & Davis sold their business to Moss & Pope and put them in possession, the lease was in full force, and the then existing term was at least from May, 1907, until May, 1908. Couch, acting for himself and Davis, had obtained a new lease for the additional space in the rear, which undeniably remained in force, according to its own terms, until May 1, 1909. This lease would have been absolutely useless to the defendants for the last year named in it unless the term of the original lease was to be extended to the same date. A stage with no auditorium and no entrance from the street would be a valueless asset to a party engaged in the business of the defendants. The plaintiff's theory, that when the second lease was obtained the parties elected to carry over the first lease, so that both would expire at

the same period, was supported by the testimony both of the plaintiff's agent and another witness and was strongly corroborated by the intrinsic probability of the testimony in this respect.

It is true that arrangement, if made, was made by Couch, and the argument now is that he, being but a cotenant with Davis under the original lease, could not bind the latter by any agreement he made concerning an extension. This argument is based on the excerpt from the charge which is the subject of the first assignment. The learned trial judge said, "If either of the defendants went to Mr. McAnulty (plaintiff's agent) and asked to have the lease extended from May 1, 1908, to May 1, 1909, and Mr. McAnulty agreed to that, then that became a contract between those parties." This instruction it is urged is not in harmony with the general rule that one of two cotenants cannot, without the knowledge or assent of the other, bind the latter to an extension of the term, an increase in the rent or other like obligation. But the learned judge was not attempting to define the abstract rule of law in cases of cotenancy. He was not dealing with a case where the authority of one tenant to do a particular act had been made an issue. He was submitting to the jury the concrete question of fact raised by the evidence, viz., was the extension which Couch admitted he had arranged for one year only or for two years? The authority of Couch to extend for one year was conceded. His right to execute the second lease for additional stage room, and thus bind his cotenant for the payment of the rent reserved thereby for the full term of two years, was in no way questioned. In negotiating the second lease the arrangement of the status of the first would naturally be germane to the admittedly authorized act and would thus be brought within at least the scope of the apparent authority of the acting cotenant.

Moreover, when Davis joined in the sale of the business to Moss & Pope, he had notice that his assigns would not be accepted as tenants by the owner and that the lat-

ter would still look for the rent to the original lessees. The possession of Moss & Pope was therefore the possession of Couch & Davis, and it was the business of the latter, if they did not desire to hold over beyond May 1, 1908, to surrender the possession upon which they had entered under the terms of the lease. They had a right to continue that possession if the lessor did not object, and the latter had a right to assume, by the continuance of that possession, that they were willing the lease should be revived for another year, to wit, from May 1, 1908, to May 1, 1909.

Even then if we concede that the language of the charge quoted would not be strictly accurate as an exposition of the general rule, we are by no means convinced that the attention of the jury was diverted from the controlling question submitted or that any harmful error resulted from its use. The first assignment is dismissed.

What we have already said sufficiently indicates the reasons for our conclusion that there was evidence to warrant a finding that the term of the original lease had been extended for a period of two years and that no binding direction for the defendants could have properly been given. The second and third assignments are dismissed.

Although we have four appeals from as many judgments, all were argued together on one set of paper-books and, as the controlling questions are identical, no further opinion will be required in their disposition.

Judgment affirmed.